IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

DANIEL RAY BROWN     PLAINTIFF

v.     Civil No. 3:16-CV-03111

NURSE JODIE WOODS,     DEFENDANTS
SHERIFF MIKE MOORE,
JAIL ADMINISTRATOR JASON DAY,
SERGEANT BOB KIRCHER,
ROGER JOHNSON, and
JOHN AND JANE DOE

## MEMORANDUM OPINION AND ORDER

Plaintiff proceeds in this matter *pro se* and *in forma pauperis* pursuant to 42 U.S.C. § 1983. Currently before the Court are Motions for Summary Judgment by Defendant Nurse Woods (ECF No. 50) and Defendants Day, Johnson, Kircher, and Moore (the "Boone County Defendants") (ECF No. 54). For the reasons explained in more detail below, the Motions are **GRANTED**.

### I. BACKGROUND

Plaintiff filed his Complaint on October 20, 2016. (ECF No. 1). On November 17, 2016, the Court entered an Order directing Plaintiff to file a First Amended Complaint. (ECF No. 20). Plaintiff filed an Addendum to Amended Complaint on November 23, 2016 (ECF No. 21), and a First Amended Complaint on November 28, 2016. (ECF No. 23).

Plaintiff's claims arise from his incarceration in the Boone County Detention Center ("BCDC") from September 21, 2016, through October 19, 2016, for a parole revocation. (ECF No. 23, pp. 4, 7, 9, 10). Plaintiff proceeds against Defendants in their personal capacities only. (ECF No. 23, pp. 5, 6, 8, 9, 10). In Claim One, Plaintiff alleges a failure

1

to protect on the part of Defendants Nurse Woods and Sheriff Moore.[1] Specifically, he alleges that Nurse Woods knew that another inmate in Plaintiff's pod had a Staph infection, but she left that inmate in in the pod, where he exposed Plaintiff to the risk of contracting the infection. He contends that Sheriff Moore was "responsible for providing a safe, secure, and healthy environment" in the BCDC, but failed to do so. (ECF No. 23, p. 5). With respect to his injuries resulting from exposure to Staph, he initially claimed in his Amended Complaint that he "got sick," (ECF No. 23, pp. 4-5), but he later clarified in his deposition that he did *not*, in fact, get sick, but had only been fearful that he might become infected with Staph. (ECF No. 56-5, p. 30).

In Claim Two, Plaintiff alleges that he was denied medical care by Nurse Woods and Jail Administrator Day. He maintains that even though at the time he was fearful that he had been exposed to a Staph infection, he "would not verbally agree to pay for a sick call" because he believed Nurse Woods was to blame for exposing him to the illness. (ECF No. 23, p. 8).

In Claim Three, Plaintiff alleges that Defendant Day denied him mental health care. (ECF No. 23, p. 8).

In Claim Four, Plaintiff alleges that Defendants Day, Kircher, Johnson, and Sheriff Moore retaliated against him for writing grievances about the Staph infection and perhaps other matters. Specifically, Plaintiff alleges that he was supposed to serve a 90-day sentence in the BCDC, but because of the grievances he filed, jail officials decided to

---

[1] Plaintiff also includes a reference to Defendant Jail Administrator Jason Day for Claim One, but he provides no further allegations, stating only "see Original Complaint Claim." Plaintiff made no allegation against Defendant Day for Claim One in the Original Complaint.

2

send him to the Arkansas Department of Correction ("ADC")—a much more restrictive environment—to finish out his sentence. (ECF No. 23, p. 10). Plaintiff also alleges in Claim Four that Defendant Kircher violated a court order when he "brought up old lawsuits" that Plaintiff had previously filed against the BCDC. (ECF No. 23, p. 11). According to Plaintiff, Defendant Kircher stated that the BCDC needed to get rid of him "because he always sues us." (ECF No. 21, p. 1). Finally, Claim Four also alleges that Defendant Johnson failed to protect some of Plaintiff's personal property that he had left in his cell at the BCDC when he was transferred to ADC custody. *Id.* at p. 3. Plaintiff does not identify the lost property.

Nurse Woods filed a Motion for Summary Judgment on May 18, 2017. (ECF No. 50). The Boone County Defendants filed a Motion for Summary Judgment on May 30, 2017 (ECF No. 54), and Supplements to their Motion were filed on May 31, 2017 (ECF No. 57), and July 27, 2017 (ECF No. 62). Plaintiff filed his combined Response to both Motions on August 18, 2017. (ECF No. 63).

## II. LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *Nat'l Bank of Commerce v. Dow Chem. Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *Nat'l Bank*, 165 F.3d at 607 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (citing *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III. DISCUSSION

Nurse Woods argues that the case against her should be dismissed for the following reasons: (1) she was not subjectively aware of any inmate with a Staph infection or any other openly communicable infection in the BCDC during the period Plaintiff was housed there, and (2) she was not deliberately indifferent to Plaintiff's objectively serious medical needs because he did not suffer from any. (ECF No. 52).

The Boone County Defendants argue that the case against them should be dismissed for the following reasons: (1) there is no proof of any personal involvement by Sheriff Moore in any of Plaintiff's claims, (2) Defendant Day was not deliberately indifferent to Plaintiff's medical needs; (3) Plaintiff has no constitutional right to a particular housing assignment; (4) comments or verbal harassment do not rise to the level of a constitutional violation; and, (5) Defendants are entitled to qualified immunity because Plaintiff has not shown any violations of his constitutional rights. (ECF No. 54, p. 3). The parties' arguments on summary judgment will be addressed below.

4

## A. Failure to Protect

Prison officials have a duty, under the Eighth Amendment, to protect prisoners from violence at the hands of other prisoners, see *Perkins v. Grimes,* 161 F.3d 1127, 1129 (8th Cir. 1998); however, not "every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victims' safety," *Farmer v. Brennan,* 511 U.S. 825, 834 (1994).

To prevail on his failure-to-protect claim, Plaintiff must satisfy the following two-pronged test: (1) show he was "incarcerated under conditions posing a substantial risk of serious harm," and (2) show that prison officials were "deliberately indifferent [to his] health or safety." See *Holden v. Hirner,* 663 F.3d 336, 341 (8th Cir. 2011) (internal citations omitted). The first prong is an objective requirement designed to ensure that the deprivation in question constitutes a violation of a constitutional right. *Id.* The second prong is subjective and requires that Plaintiff show that the official or officials in question "both knew of and disregarded 'an excessive risk to inmate health or safety.'" *Id.* (quoting *Farmer,* 511 U.S. at 837). "An official is deliberately indifferent if he or she actually knows of the substantial risk and fails to respond reasonably to it." *Young v. Selk,* 508 F.3d 868, 873 (8th Cir. 2007). Negligence alone is insufficient to meet the second prong; instead, the official must "recklessly disregard a known, excessive risk of serious harm to the inmate." *Davis v. Oregon Cnty.,* 607 F.3d 543, 549 (8th Cir. 2010) (internal quotation marks and citation omitted). Furthermore, "[c]laims under the Eighth Amendment require a compensable injury to be greater than *de minimis.*" *Irving v. Dormire,* 519 F.3d 441, 448 (8th Cir. 2008).

In Claim One, Plaintiff failed to allege that he suffered any physical injury, *de minimis* or otherwise. He alleges he was having blood tests done at the time he filed the

5

Complaint, presumably to confirm that he had been exposed to a Staph infection while residing at the BCDC. In his deposition some months later, however, Plaintiff admitted that his blood test results "happily, were negative." (ECF No. 56-5, p. 30). He did not contract a Staph infection or other illness as a result of the alleged exposure to Staph in the BCDC. He therefore failed to allege a viable failure-to-protect claim, and Claim One must be dismissed.

### B. Denial of Medical Care

The Eighth Amendment's prohibition on cruel and unusual punishment prohibits deliberate indifference to prisoners' serious medical needs. *Luckert v. Dodge Cnty.*, 684 F.3d 808, 817 (8th Cir. 2012). The deliberate indifference standard includes "both an objective and a subjective component: 'The [Plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000) (quoting *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997)).

To show that he suffered from an objectively serious medical need, Plaintiff must show that he was "diagnosed by a physician as requiring treatment" or had an injury "that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011) (internal quotations and citations omitted). For the subjective prong of deliberate indifference, "the prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not give rise to the level of a constitutional violation." *Popoalii v. Corr. Med. Servs*, 512 F.3d 488, 499 (8th Cir. 2008) (internal citation omitted).

Here, Plaintiff failed to provide any evidence that he suffered from an objectively serious physical medical need during his incarceration at the BCDC. Even accepting as true that a fellow inmate in his pod had a Staph infection, Plaintiff admits that he did not get sick. And even though Plaintiff claims that Defendant Day denied him mental health care, Plaintiff failed to provide any evidence that he suffered from an objectively serious mental health condition for which treatment was necessary. Plaintiff's medical screening form at booking indicates that he denied having any mental health issues. (ECF No. 56-4, p. 2). Further, at his deposition, Plaintiff testified he had mental health and memory problems that were "maybe stress-related." (ECF No. 56-5, p. 14). But later in the deposition, Plaintiff clarified that he had "slow cognitive processing and trouble concentrating." (ECF No. 56-5, p. 18). Plaintiff could not identify any treatment he had sought to address any of these alleged mental health conditions. (ECF No. 56-5, p. 19). Furthermore, he testified that he had never been diagnosed with, or treated for, any mental health issues prior to coming to the BCDC, nor was any such diagnosis or treatment rendered after he was released from the BCDC. (ECF No. 56-5, pp. 14-15, 28-29). Because there are no genuine, material disputes of fact with respect to Plaintiff's claim as to the denial of medical care, Claims Two and Three will be dismissed.

### C. Retaliation

Plaintiff alleges in Claim Four that his transfer from the BCDC to the ADC was in retaliation for filing grievances and civil lawsuits. He claims he was transferred to the ADC in an effort to chill his speech and in violation of his First Amendment rights. "To prevail on a § 1983 claim for retaliation in violation of the First Amendment, [a Plaintiff] must demonstrate (1) that he engaged in a protected activity; (2) that the government official took adverse action against him that would chill a person of ordinary firmness from

continuing in the activity; and (3) that the adverse action was motivated at least in part by the exercise of the protected activity." *Santiago v. Blair*, 707 F.3d 984, 991 (8th Cir. 2013) (citing *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004)).

"In a retaliatory transfer case, the burden is on the prisoner to prove that but for an unconstitutional, retaliatory motive the transfer would have not occurred." *Sisneros v. Nix*, 95 F.3d 749, 752 (8th Cir. 1996) (internal quotation omitted). "Even if retaliation was one factor in the decision to transfer [an inmate]," the inmate must show that his transfer would not have occurred "but for" the retaliation. *Beaulieu v. Ludeman*, 690 F.3d 1017, 1026 (8th Cir. 2012); *Webb v. Hedrick*, 409 F. App'x 33, 35 (8th Cir. 2010) (unpublished).

Plaintiff's Claim Four centers on his interpretation of the Arkansas Parole Board's disposition of his Parole Revocation Hearing. Plaintiff filed a copy of the Parole Board's written report in the record. *See* ECF No. 21, p. 5. The report states: "Offender is to remain in custody for ninety (90) days contingent upon good behavior and an approved parole plan. Failure to comply will result in transfer to the ADC for the recommended time period mentioned below." *Id*. Plaintiff interprets this statement to mean that the Parole Board sentenced him to 90 days in the BCDC, and ordered that he was not to be transferred to the ADC unless he failed to demonstrate "good behavior."

At some point during his 90-day sentence, however, Plaintiff was indeed transferred from the BCDC to the ADC. He claims that there was no legitimate reason to transfer him, and that BCDC officials did so in order to retaliate against him for filing administrative grievances and civil lawsuits.

Boone County Defendants respond that the BCDC only housed Plaintiff at the direction of the ADC. (ECF No. 55, p. 11). Plaintiff was adjudicated guilty of violating his

8

parole on October 17, 2016, and he was sentenced to 90 days in custody. According to the Parole Board disposition report, Plaintiff was specifically ordered to be placed "in the custody of the Arkansas Department of Correction" for his term of incarceration. (ECF No. 21, p. 5). Although Plaintiff began his period of incarceration at the BCDC, he remained in the official custody of the ADC during that entire time, and he therefore had no particular right to resist transfer to the ADC.

Further, as correctly argued by the Boone County Defendants, inmates have no constitutional right to be housed in a less restrictive setting. *Brown v. Nix*, 33 F.3d 951, 954 (8th Cir. 1994). At his deposition, Plaintiff testified that after he was transferred to the ADC, he could not have visits from his parents three times per week, though he was allowed this privilege at the BCDC. He complained that the "harsh" environment in the ADC required him to "have a job." (ECF No. 56-5, p. 56). He also objected to being housed at the ADC with "killers, rapists, and thieves." *Id.* As previously stated, Plaintiff had no right to be housed at the BCDC instead of the ADC, as he was originally committed to the ADC's custody. Further, his complaints about his conditions of confinement at the ADC do not implicate constitutional concerns. For these reasons, Plaintiff's retaliation claim in Claim Four is dismissed.

### D. Comments or Verbal Harassment - Defendant Kircher

Plaintiff also alleges in Claim Four that Defendant Kircher violated a court order by publicly "[bringing] up old lawsuits" that Plaintiff had filed in the past against the BCDC. (ECF No. 23, p. 2). To the extent that Kircher's public mention of Plaintiff's lawsuits could be construed as a "taunting" behavior or harassment, the comment does not create a claim of constitutional dimension. *McDowell v. Jones*, 990 F.2d 433, 434 (8th Cir. 1993)

(inmate's claims of general harassment and of verbal harassment were not actionable under § 1983). The harassment claim against Defendant Kircher is dismissed.

### E. Individual Claims - Defendant Sheriff Moore

Plaintiff alleges that Sheriff Moore failed to provide a safe, secure, and healthy environment at the BCDC because Plaintiff was exposed to a Staph infection. As previously explained, Plaintiff's claim regarding exposure to Staph lacks merit and will be dismissed on summary judgment. As for Plaintiff's contention that Sheriff Moore should be held personally liable for transferring him to the ADC, the Court held that there was nothing illegal about this transfer. The personal-capacity claims against Sheriff Moore are therefore dismissed.

### F. Lost Personal Property Claim - Defendant Johnson

Plaintiff's final allegation in Claim Four is that Defendant Johnson failed to protect his unidentified personal property when Plaintiff left it behind in his jail cell. This claim is not specific enough to create a fact issue suitable for trial, nor does not rise to the level of a constitutional violation. Even if Plaintiff could prove that he suffered a loss of property, and that the deprivation was the result of an intentional act, rather than an accidental or negligent one, there are adequate post-deprivation remedies that Plaintiff could invoke to regain the lost property. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (intentional deprivation of property does not violate due process when meaningful post-deprivation remedy is available); *Barnett v. Centoni*, 31 F.3d 813 (9th Cir. 1994) (negligent or intentional deprivation of prisoner's property fails to state claim under § 1983 if state has adequate post-deprivation remedy); *Elliot v. Hurst*, 307 Ark. 134, 817 S.W.2d 877, 880 (1991) (cause of action for conversion lies where distinct act of dominion is exerted over

property in denial of owner's right). For these reasons, the allegation against Defendant Johnson in Claim Four is also dismissed.

## IV. CONCLUSION

For the reasons set forth herein, the Motion for Summary Judgment by Defendant Nurse Woods (ECF No. 50) and the Motion for Summary Judgment by Defendants Day, Johnson, Kircher, and Moore (ECF No. 54) are both **GRANTED**, and the case is **DISMISSED WITH PREJUDICE**.

Judgment will be entered accordingly.

**IT IS SO ORDERED** on this 5th day of February, 2018.

/s/ Timothy L. Brooks
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE